In the Matter of the WELFARE
OF D.S.M.

No. A05–638.

Court of Appeals of Minnesota.

March 14, 2006.

Leonardo Castro, Chief Fourth District Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for appellant D.S.M.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent State of Minnesota.

Considered and decided by KLAPHAKE, Presiding Judge, PETERSON, Judge, and CRIPPEN, Judge.*

## OPINION

KLAPHAKE, Judge.

Appellant D.S.M. was adjudicated delinquent for second-degree criminal sexual conduct based on admissions made during a police interrogation. He argues that the admissions should be suppressed because he was not informed of his *Miranda* rights before being interrogated. The district court concluded that the interrogation was not custodial and that appellant thus was not entitled to receive a *Miranda* warning. We reverse and remand for a new hearing, and vacate appellant's extended jurisdiction juvenile (EJJ) status.

## FACTS

In December 2001, Brooklyn Center Police learned that seven-year-old T.M.H. had reported that he had been sexually molested by then–14–year–old appellant, who lived with his mother and her fiancé, T.M.H.'s father. T.M.H. primarily resided with his mother in Douglas County, Wisconsin, but he visited his father during summers and holidays; the alleged conduct occurred during late 2000 and the summer of 2001, while T.M.H. was visiting his father.

Detective Peggy Broberg of the Brooklyn Center Police contacted appellant's mother and requested to speak with appellant. On January 15, 2002, appellant's mother and T.M.H.'s father brought appellant to the Brooklyn Center police station. Broberg conducted a private interview of appellant, although Broberg and appellant knew that his mother was in a waiting room. Broberg said to appellant, "If you don't want to talk to me, just tell me so and I'll take you downstairs." They spoke for 25 to 35 minutes about the allegations of sexual molestation, and appellant denied having any sexual contact with T.M.H.

Thereafter, at Detective Broberg's suggestion, a Wisconsin social worker conducted a second interview of T.M.H. During the interview, T.M.H. elaborated on his original allegation that appellant had touched his penis with his hand, and alleged that appellant had twice put his mouth on T.M.H.'s penis and had twice anally penetrated him.

On January 28, 2002, Dr. Chris Campbell examined T.M.H. Dr. Campbell's med-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

ical report indicated that T.M.H. had an "anal fissure at the six o'clock position" that appeared "very small." Dr. Campbell concluded that he "could not state one way or the other whether there has been past history of anal intercourse or sexual abuse."

Detective Broberg interviewed appellant a second time on February 17, 2002. Again, his mother and her fiancé brought him to the police station, and again they were not invited to attend the interrogation. Without giving appellant a *Miranda* warning, Broberg intensely questioned appellant for 55 minutes, shouting at him, suggesting that he would not be able to leave until he confessed and that the interview could continue all day, and causing appellant to break down sobbing several times. Broberg did not inform appellant that he was free to leave the interrogation. Eventually, appellant admitted to some sexual contact with T.M.H., although he strongly denied that sexual penetration had occurred. After being asked numerous times, however, whether penetration had occurred and denying it numerous times, appellant finally conceded with a "sigh" that he guessed it had occurred if that was what T.M.H. said.

Appellant was charged with first- and second-degree criminal sexual conduct under Minn.Stat. §§ 609.342, subd. 1(a), 609.343, subd. 1(a) (2000). The district court granted the state's motion for EJJ designation under Minn.Stat. § 260B.130, subd. 1(3) (2002), a decision that was affirmed by this court in an unpublished opinion. *See In re Welfare of D.S.M.*, No. A03–949, 2004 WL 771680 (Minn.App. Apr. 13, 2004), *review denied* (Minn. June 29, 2004).

After the district court denied appellant's pretrial suppression motions, appellant agreed to submit the case to the district court on stipulated facts. The district court found appellant guilty of second-de-gree criminal sexual conduct and adjudicated him delinquent. The court later denied the state's motion for reconsideration based on a claim that the facts found by the court would have supported a finding of guilt on the first-degree criminal sexual conduct charge and denied appellant's motion to vacate the EJJ designation. Appellant received a stayed prison term of 21 months, was ordered to complete sex-offender treatment, provide a DNA sample and register as a sex offender, and was placed on probation until he reached the age of 21.

## ISSUE

Did the district court err in declining to suppress appellant's admissions, even though they were elicited without a prior *Miranda* warning?

## ANALYSIS

■ "[W]hether a defendant was 'in custody' at the time of an interrogation is a mixed question of law and fact, requiring the appellate court to apply the controlling legal standard to historical facts as determined by the trial court." *State v. Wiernasz*, 584 N.W.2d 1, 3 (Minn.1998). The appellate court reviews the district court's findings of fact under the clearly erroneous standard of review but reviews de novo the district court's custody determination and the need for a *Miranda* warning. *Id.*

■ Before being subjected to a custodial interrogation, a defendant must be given a *Miranda* warning to advise the defendant of his Fifth Amendment protection against self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The test for determining whether a person is in custody is objective-whether the circumstances of the interrogation would make a reasonable person believe that he was under

formal arrest or physical restraint akin to formal arrest. *State v. Rosse*, 478 N.W.2d 482, 484 (Minn.1991). The fact that an interrogation occurs at a police station does not always lead to the conclusion that it was custodial. *Wiernasz*, 584 N.W.2d at 3. However, the determination of whether a juvenile would reasonably believe he or she was in custody must be made from the perspective of the juvenile. *See In re Welfare of G.S.P.*, 610 N.W.2d 651, 657 (Minn.App.2000).

The circumstances surrounding appellant's interrogation support a conclusion that he reasonably would have believed that he was in custody at the time he made his admissions. Appellant had some experience with police when he was part of a diversion program resulting from a 1997 burglary charge, but the record does not indicate any other criminal conduct or that appellant had ever been interrogated by police or been to a police station. Appellant's mother and her fiancé brought him to the police station at Detective Broberg's request, but they were asked or told to sit in a waiting room while he was escorted to a private room on a different floor of the station.

Detective Broberg launched the interrogation by telling appellant that she had "talked to a whole bunch of people" and "the results" showed that "something happened between [appellant] and [T.M.H.]." She also informed appellant that T.M.H. had been injured and limited her questions to gaining an admission that appellant had caused these injuries. In the first part of the interview, Broberg said, "You know I have all the time in the world ... [s]o don't think that with you being silent it's going to help the matter because it's not. I want you to tell me what happened." Nearly every question thereafter was accusatory, and many of the questions and hypothetical scenarios were coercive. Broberg's insistence on her version of the facts through repeatedly accusing appellant of sexually penetrating T.M.H. clearly led appellant to conclude that her version was the only one she was willing to accept. Finally, while Broberg told appellant during the first interview that he could leave if he did not want to talk to her, it was clear from the questions and tone of the second interview that appellant was not free to leave. Given these facts, we conclude that appellant was improperly subjected to a custodial interrogation without receiving a *Miranda* warning. *See, e.g., In re Welfare of R.J.E.*, 642 N.W.2d 708, 709–10 (Minn.2002) (affirming suppression of confession made by high school student interrogated in school office by uniformed school liaison officer, where officer did not give juvenile *Miranda* warning and did not inform juvenile he could decline to answer questions, could ask for parents, and was free to leave); *G.S.P.*, 610 N.W.2d at 657–58 (12–year–old juvenile with no prior criminal justice experience summoned to principal's office where principal and police officer conducted interrogation without telling juvenile he was free to leave, tape-recorded interrogation, and told juvenile he must answer questions; court reversed conviction because officer failed to give juvenile *Miranda* warning).

We must next determine whether the harmless error doctrine applies to appellant's adjudication of delinquency after the district court refused to suppress the illegally gained confession. The supreme court recently held that the harmless error rule may not be applied to review of juvenile adjudications of delinquency that were submitted to the district court on stipulated facts. *R.J.E.*, 642 N.W.2d at 712–13. When a juvenile is improperly subjected to a custodial interrogation without receiving a *Miranda* warning, and then stipulates to the facts in order to expedite appellate review of the issue, the proper disposition

of the case is reversal of the adjudication of delinquency and remand for a new trial. *Id.* at 713 (stating that problem with applying harmless error review to trials on stipulated facts is evidence goes unchallenged). Here, the record included challenges to the victim's veracity and evidence that suggested that others within the extended family could have been involved in sexual misconduct. We therefore reverse the adjudication of guilt and remand for a new trial.

We also conclude that vacation of appellant's EJJ designation is mandated under the facts of this case. Without D.S.M.'s confession, there is minimal evidence to support the primary factors for his initial EJJ designation: the serious offense of first-degree sexual misconduct or appellant's high culpability. *See* Minn.Stat. § 260B.130, subd. 2 (2002); *D.S.M.,* 2004 WL 771680, at *1–*2, *4.

## D E C I S I O N

We reverse the district court's adjudication of guilt because appellant's confession was gained without a proper *Miranda* warning, and remand for a new trial. We also vacate appellant's EJJ designation as now unsupported by the record.

**Reversed and remanded.**